CITY OF CORPUS CHRISTI et al. v. MIREUR et al. (No. 6271.)

(Court of Civil Appeals of Texas. San Antonio. June 18, 1919. Rehearing Denied July 5, 1919.)

1. MUNICIPAL CORPORATIONS ⟨⟩124(2)—CITY TREASURER—LETTING OF OFFICE—UNCONSTITUTIONALITY.

A city charter, if it purports to authorize the letting by contract to the highest and best bidder of the office of city treasurer, etc., to that extent is unconstitutional.

2. STATUTES ⟨⟩181(2) — CONSTRUCTION — SENSE AND PUBLIC POLICY.

A statute should be so construed, if possible, as to avoid absurd and unjust consequences, and a construction should be adopted which comports with the public policy of the state, rather than a contrary one outraging such policy and destroying the ideals of government.

3. MUNICIPAL CORPORATIONS ⟨⟩993(2)—TAXPAYERS' SUIT—CITY DEPOSITARY—AWARD TO BANK—"ILLEGAL AND UNAUTHORIZED CONTRACT."

In view of Charter of City of Corpus Christi, art. 12, § 1, taxpayers of the city can sue in equity to restrain it and its officers from awarding the office of city depositary to a national bank which has not made the best bid for the office based on interest on daily balances and value of bond tendered as expressly stipulated by the city charter, even though plaintiff taxpayers are officers or agents of a rival bank; acceptance of the lower bid being an attempt to execute an illegal and unauthorized, if not fraudulent, contract or agreement on behalf of the city.

4. MUNICIPAL CORPORATIONS ⟨⟩993(2)—TAXPAYER'S SUIT—EXECUTION OF ILLEGAL CONTRACT—STATUTES.

Charter of City of Corpus Christi, art. 12, § 1, providing that any citizen who is a property taxpayer may maintain an action to restrain the execution of any illegal, unauthorized, or fraudulent contract or agreement on behalf of the city, does not mean the taxpayer may act for the city in prosecuting a suit; the suit being, not in behalf of the city, but to restrain the city council from making such a contract.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by Joe Mireur and others against the City of Corpus Christi and others. From an order for plaintiffs, except in part, defendants appeal. Judgment affirmed.

E. B. Ward, of Corpus Christi, Dougherty & Dougherty, of Beeville, and Russell Savage, of Corpus Christi, for appellants.

Kleberg, Stayton & North, of Corpus Christi, and Templeton, Brooks, Napier & Ogden, of San Antonio, for appellees.

FLY, C. J. This is a suit instituted by the appellees, Joe Mireur, John Jordt, Joseph Hirsch, Phil. Howerton, and Barton Dunn, against appellants, the city of Corpus Christi, its mayor, Gordon Boone, its commissioners, John Grant, P. G. Lovenskiold, H. M. Holden, and W. H. Griffin, its secretary, A. K. Stratton, the City National Bank of Corpus Christi, and the Corpus Christi National Bank, seeking to annul a certain contract made and entered into between the city of Corpus Christi and the City National Bank, and to restrain any action or exercise of privileges thereunder, for a mandatory

temporary injunction directing the city and its officials to accept the bid of the Corpus Christi National Bank for the office of city treasurer and receive and approve its bond. From an order granting all but the last relief prayed for this appeal is prosecuted.

The differences in this case arise from the construction of section 7, art. 10, of the special charter of the city of Corpus Christi, which was enacted by the Legislature on March 15, 1909 (Sp. Laws 1909, c. 33). The section follows:

"The office of city treasurer shall be let by contract to the highest and best bidder, in the discretion of the city council, and in determining the highest and best bidder, the highest rate of interest to be paid upon daily balances and the value of bond tendered shall be the criterion that shall decide. The superintendent of receipts and disbursements and accounts shall immediately upon being assigned to such superintendency, advertise for bids for the office of city treasurer for a period of three consecutive days in some daily newspaper published in the city of Corpus Christi, stating what said bids shall specify, and the terms on which said bids shall be received, including the rate of interest on daily balances. He shall also mail to each bank in the city of Corpus Christi, within said three days, a copy of said notice. On the tenth day (Sundays and legal holidays excluded) after the first day of such advertisement, said bids shall be opened and examined by the city council. The date of the opening of said bids shall be specified in the above-mentioned notice. At the next regular meeting of the council after said bids are opened, or if the day on which said bids are opened is a regular meeting day the city council shall proceed to pass upon said bids and elect a city treasurer, who shall hold his office for a period of two years and until his successor is elected and qualified. The city treasurer so appointed shall be deemed for all purposes an officer of the city, and shall be under the direct supervision of the superintendent of receipts, disbursements and accounts. Said city treasurer shall give bond for the benefit of the city of Corpus Christi as may be required of him by the city council, payable to the mayor and his successors in office, for the faithful performance and discharge of the duties of his office. He shall receive and securely keep all moneys belonging to the city and make all payments of the same upon warrants or orders signed by the mayor and countersigned by the city controller, under seal of the city, except that payments from the school fund shall be upon warrants or orders signed by the president of the school board and the mayor and countersigned by the city controller, under the seal of the school board: Provided that no order or warrant shall be paid by him unless it shows upon its face that the city council or school board, as the case may be, has ordered its issuance and the purpose for which same was issued. He shall render a full and correct statement under oath of his receipts and disbursements to the city council or the school board, as the case may be, at its first regular meeting in each month, and such additional statements concerning the conduct of his office and his accounts as the city council, the superintendent of receipts, disbursements and accounts or the city controller may from time to time require. In addition to the statements required of him to the city council, as above prescribed, he shall also render monthly a full and correct statement of all moneys on account of the school fund to the president of the school board. He shall perform such other acts and duties pertaining to his said office as the city council may require, and he shall receive for his services the sum of $5.00 per annum."

In this connection it may be stated that the superintendent of receipts, disbursements, and accounts is a member of the city council chosen by it to have charge of the department of receipts, disbursements, and accounts, and is in direct control of the finances of the city. The city controller is chosen by the city council, and his duty is "to superintend and supervise the fiscal affairs of the city, and to manage and conduct the same as prescribed by this act." He keeps books of account which "shall exhibit accurate and detailed statements of all moneys received and expended for account of the city by all city officials and other persons and shall show in detail the property owned by the city and the income derived therefrom." He countersigns all vouchers and warrants.

[1, 2] The section providing for the selection of a city treasurer probably has no parallel in the city charters of the country, and if, as contended by appellants, such treasurer may be a corporation and purchase the office through his or its bid for the use of the city money, we have a condition or state of affairs repugnant to purity of government and destructive of the principles upon which officers should be chosen in democratic communities. While there is language in the section quoted indicative of an intention to create an office, we cannot conceive that a legislative body in this country would lend its countenance to selling an office of a city to the highest bidder, as would an auctioneer sell goods and chattels placed in his hands for sale. No such law could be sustained under our Constitution which would authorize or permit the sale or farming out of an office. A statute should be so construed, if possible, as to avoid absurd and unjust consequences, and such construction should also be adopted which comports with the general public policy of the state, rather than that which would outrage such policy and destroy its ideals of government.

The duties imposed upon the treasurer, so-called, are duties imposed under the general law on depositories selected for cities and towns, rather than those imposed upon a treasurer. Chapter 3, tit. 44, Rev. Stats. That law provides for notice that bids will be received at a certain time for the custody of the money of the city; that the city shall select the one "offering to pay to the city the largest amount for such privileges";

that the depository selected shall give a certain bond; and that it shall pay checks drawn in a certain manner by a certain officer. All of the authority given and liability imposed by section 7 of article 10 of the Corpus Christi charter is given and imposed by the statute; only the restrictions imposed as to supervision and control by others are not imposed upon the statutory depository. If the object of the special provision was to create an officer who would act as a depository, it would be in conflict with the provisions of the statute ,providing the methods of the selection of depositories by city governments. This is a day for depositories, and we have laws providing them for state, county, and city.

It is clear from the provisions of section 7 that it is contemplated that banks could bid for and receive the appointment as city treasurer, and the city government has so construed the provisions of the section, and ever since the charter went into effect has appointed a national bank as treasurer of the city, and the appointment last made and which is the subject of this suit was that of a national bank. It is admitted by appellants that a bank could be appointed to the office of treasurer, which admission was necessarily made; for, if a bank cannot be appointed under the provisions of the charter, the city should be restrained from making any such appointment. If the charter intended to provide for a depository, rather than a treasurer, there would no difficulty arise out of the appointment of a national bank. No Constitution or statute has ever contemplated that a corporation should be appointed to and exercise the powers of any office. It could not qualify as an officer or perform the functions thereof. The absurdity of a corporation being the officer of another corporation is apparent on its face. We have considered this question only in view of the contention that this suit is really a contest between two national banks for the office of city treasurer of Corpus Christi. On the contrary, we are of opinion that the contest is one between a national bank and certain citizens who are desirous of having a bank appointed as the depository that has bid 1⅜ per cent. more interest on the daily balances of the city than the bank to whom the deposits were awarded.

[3] The language of the charter is clear and unequivocal, and gives no discretion to the city council in the selection of a depository except in ascertaining the highest and best bid, and in order that there might be no doubt as to what should be taken into consideration in, ascertaining the highest and best bid, it is provided that "the highest rate of interest to be paid upon daily balances and the value of bond tendered shall be the criterion." When the highest rate of interest on daily balances and the value of the bond is ascertained, the end of all discretion is reached, and the law then commands the city council to let the contract to the bidder of the highest rate of interest and who has the most valuable bond. It is unquestioned in this case that the highest rate of interest was offered by the Corpus Christi National Bank, and the value of the bond tendered by it was much greater than that of the bank to which the contract was awarded. That bank only bid 4 per cent. on daily balances, while the other bid was 5⅜ per cent. interest. The award to the lowest bidder with the bond of least value was not in the exercise of any discretion lodged in the city council by law, but was in the face of the rights of the taxpayers of the city who are directly interested in receiving the highest rate of interest obtainable for money on deposit by the city. Each one of the taxpayers has such an interest as can be enforced in any court of equity. As said by the Supreme Court in City of Austin v. McCall, 95 Tex. 565, 68 S. W. 791, and approved by this court in Terrell v. Middleton, 187 S. W. 367:

"Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate powers."

The evidence in this case shows a clear and arbitrary misuse of corporate powers as clearly defined in the charter of the corporation. The statute is mandatory as to the highest bidder with the most valuable bond being awarded the contract, and the law was arbitrarily disregarded.

The question upon which the right of the individual taxpayer to sue to prevent the making of an illegal contract would usually turn is whether or not the execution of the contract will financially affect the taxpayer. Undoubtedly, if the income of the city is decreased by the making of the contract, taxation will necessarily be increased, and any increase of taxation affects the interest of each taxpayer. The fact that the taxpayers might be officers or agents of a rival bank would make the loss to them no less and could not affect their rights as citizen taxpayers. Section 1, art. 12 of the charter (Special Laws 1909) in terms provides that—

"Any citizen who is a property taxpayer of the city of Corpus Christi may maintain an action in the proper court to restrain the execution of any illegal, unauthorized or fraudulent contract or agreement on behalf of said city. * * *"

The acceptance of the lowest bid for the funds instead of the highest, as commanded by law, was undoubtedly an attempt to execute an illegal and unauthorized, if not fraudulent, "contract or agreement on behalf of said city."

The discretion vested in the city council of Corpus Christi is circumscribed and limited by plain and express conditions as to what basis such discretion shall rest upon, and is so clear as scarcely to justify construction, but, even if full discretion had been vested in the council, it would be required to conform to law, and not be exercised in utter disregard of the language of the charter.

As said by Judge Dillon (Municipal Corporations, § 242, p. 457 [5th Ed.]):

"Power to do an act is often conferred upon municipal corporations, in general terms, without being accompanied by any prescribed mode of exercising it. In such cases the common council, or governing body, necessarily have, to a greater or less extent, a discretion as to the manner in which the power shall be used."

But where the mode and methods are prescribed they must be strictly followed. As said by the Supreme Court of New Jersey in McGovern v. Board of Public Works, 57 N. J. Law, 580, 31 Atl. 613:

"And respecting the mode in which contracts by corporations should be made, where the mode of contracting is specially and plainly prescribed and limited, that mode is exclusive, and must be pursued."

All the power possessed by the city council of Corpus Christi in regard to passing upon and accepting bids for the deposit of the municipal funds is found in section 7, herein copied, where the mode of contracting is fully prescribed, and unless that mode is strictly followed no contract is created.

"The charter—the source of all the power of the mayor or council over the subject—having limited the mode of its exercise, they could not in a different mode make a valid contract; nor could they by any subsequent approval or conduct impart validity to such contract." Dill. Mun. Corp. § 783, and authorities cited in footnote; City of Bryan v. Page, 51 Tex. 532, 32 Am. Rep. 637.

The method of letting the contract for a depository is clearly and explicitly prescribed, the only qualifications prescribed being the highest rate of interest and most valuable bond, and the city council had no right to take into consideration moral or political considerations, if they did so, in selecting a depository. That moral considerations were not the moving cause for the selection of the lowest bidder is apparent from the fact that a national bank, a corporation, was selected, and we know no degrees of morality among such institutions. The charter prescribes financial qualifications alone, and those qualifications were brushed aside by the city council, and matters considered not clearly shown, but which might be surmised without a strong draft on the imagination.

[4] Appellants seek to construe section 1, art. 12, of the charter, which provides that "any citizen who is a property taxpayer of the city of Corpus Christi may maintain an action in the proper court to restrain the execution of any illegal, unauthorized or fraudulent contract or agreement on behalf of said city," as meaning that the taxpayer may act for the city in prosecuting a suit to restrain the execution of an illegal contract. Such construction is unwarranted. There would be no reason for placing any such power in the hands of the taxpayer, and the other matters which the taxpayer is given the right to have restrained clearly show that the suit is not in behalf of the city, but to prevent the city council, in behalf of the city, from making "any illegal, unauthorized, or fraudulent contract or agreement." Immediately in connection with the authority given to restrain the city from making illegal contracts is given the right to restrain any disbursing officer from paying illegal bills, etc., clearly indicating that the whole object of the section is to give authority to prevent illegal action on the part of the city or its officers, and not to assist them in avoiding some contract into which they may have been inveigled. The fact that in equity the taxpayer may be empowered to institute such a suit does not militate against the intention to embody that authority in a positive statute. Appellees are clothed with authority to restrain the city from making the illegal and unauthorized contract, and even if it incidentally decided the right of a party to an office, as it does not, it could not affect the right to destroy the illegal contract. The authorities cited by appellants have no applicability to the facts of this case.

The judgment of the trial court, after overruling certain exception, is as follows:

"And it is further considered, adjudged, and decreed that the clerk of the district court of Nueces county, Tex., do issue a writ of injunction in all things as prayed for in such petition of plaintiffs and as prayed for by defendant Corpus Christi National Bank, in its original answer, upon plaintiffs executing to adverse parties a bond as above mentioned commanding the said defendants to desist and refrain from attempting to carry into effect and enforce the purported contract of May 1, 1919, between the city of Corpus Christi and the City National Bank of Corpus Christi, and commanding the said City National Bank of Corpus Christi to desist and refrain from calling for or demanding the city funds now in the hands of the Corpus Christi National Bank, and commanding the Corpus Christi National Bank to desist and refrain from paying out any of such funds to the City National Bank, and commanding the defendants to desist and refrain from attempting to carry out the purported contract with the said City National Bank of Corpus Christi and from in any manner recognizing or attempting to recognize the said City National Bank as the city treasurer of the said city of Corpus Christi, until the further orders of the said district court of the Twenty-Eighth judicial district of Texas, to be holden within and for the county of Nueces, at

the courthouse thereof in Corpus Christi, on the last Monday in July, A. D. 1919, being the 28th day of July, A. D. 1919, when and where the said writ shall be made returnable."

That judgment is affirmed.