**BOWLES et al. v. BRYAN et al.    (No. 9384.)***

(Court of Civil Appeals of Texas. Dallas. Oct. 17, 1925. Rehearing Denied Nov. 21, 1925.)

1. **Husband and wife** ⊄⇒270(8)—**Evidence held to sustain finding purchasers were put on inquiry of plaintiff's claim to land as community property.**

In an action of trespass to try title, evidence *held* to sustain finding that purchasers were put on inquiry as to plaintiff's claim to land as community property.

2. **Husband and wife** ⊄⇒274(1)—**Plaintiff claiming property as community property of deceased grandparents could rely on their adverse title against one acquiring title through judicial sale as property of grandmother only.**

Where husband and wife acquired property by exchange, but deed was given to wife only after husband's death, grandson, who as heir of such parties, in suit to recover part of such property as constituting community property of both grandparents, could rely on their adverse title as against one who acquired title to

(277 S.W.)

such property through a judicial sale thereof, ordered by probate court as constituting property of wife alone.

**3. Vendor and purchaser ⊜⇒239(6)—Defense of innocent purchaser not available against title acquired by adverse possession.**

The defense of innocent purchaser of legal paper title is not available against the owner of the title by adverse possession.

**4. Attorney and client ⊜⇒148(2)—Attorney assigned interest in recovery as compensation after part performance had interest entitling him to bring action to try title.**

Where client gave his attorney written power to sue for the recovery of land, and assigned two-thirds interest in recovery as compensation for attorney, and where attorney under the evidence was shown to have partly performed such contract in employment, *held* attorney had such an interest in the controversy as would entitle him to recover in action of trespass to try title thereto.

**5. Witnesses ⊜⇒78—To attack competency of witness for conviction of felony, record proof of conviction must be shown.**

In action of trespass to try title, alleged error in permitting witness to testify on ground that he had been convicted of a felony not sustainable, where no record proof that such conviction was offered and witness' testimony in course of examination as to his conviction could not take place of such primary evidence.

**6. Evidence ⊜⇒181—Pardon of witness held satisfactorily shown, and evidence of loss of pardon sufficient to authorize secondary evidence as to pardon's existence.**

In an action of trespass to try title, where it was claimed that permitting witness to testify was erroneous because he had been convicted of a felony, *held* that pardon of such witness was satisfactorily shown, and evidence of loss of the pardon was sufficient to authorize secondary evidence as to its existence.

**7. Appeal and error ⊜⇒970(2)—Evidence ⊜⇒581—Sufficiency of predicate to authorize admission of evidence of witness given at former trial discretionary and not disturbed where no abuse shown.**

In an action of trespass to try title, sufficiency of predicate to authorize the admission of testimony of a witness given at former trial is discretionary, and exercise thereof by court will not be disturbed on appeal except for abuse.

**8. Evidence ⊜⇒576—Court not shown to have abused discretion in permitting testimony of witness given at former trial to be given, where witness infirm and unwilling to attend trial.**

In a suit of trespass to try title, *held* that court had not abused its discretion in permitting testimony of witness given at former trial to be introduced in evidence, though such witness lived within jurisdiction and was alive, where it was shown she was infirm and unwilling to attend trial.

**9. Vendor and purchaser ⊜⇒239(6)—Where plaintiff claimed title through adverse possession, objection to introduction of evidence based on defense of innocent purchaser properly overruled.**

In action of trespass to try title where plaintiff claimed title through adverse possession of grandparents, and introduced evidence tending to show agreement between grandparents and original owner of land as to exchange of property, objection to such evidence on ground there was no evidence tending to show purchaser had any knowledge of such transaction was properly overruled; being predicated on defense of innocent purchaser which is not available against title by adverse possession.

**10. Judgment ⊜⇒252(1)—Intervention by attorney not new suit but proceeding growing out of original suit and partition between intervener and defendants authorized, though asked only in plaintiff's petition.**

In action by heir to recover certain property as constituting community property of his grandparents wherein plaintiff's attorney intervened and claimed two-thirds interest of plaintiff under agreement as compensation for prosecuting suit, *held* such intervention was not new suit, but a proceeding growing out of original suit, and hence a judgment decreeing partition of land between intervener and defendants was authorized under original petition asking for such partition, though in intervener's petition such prayer was not asked.

**11. Pleading ⊜⇒35—Judgment for intervener against defendant extinguished defendant's entire interest in property and allegations in order relative to defendant's deed from plaintiff's former attorney immaterial and surplusage.**

In an action by heir to recover property claimed to be the community estate of his grandparents, where attorney of plaintiff intervened to claim interest in property under agreement with plaintiff as compensation for his services, a judgment for intervener against defendant and his legal representatives effectively extinguished whatever rights he may have had, and hence allegation in complaint and order of court as to cancellation of deed given by plaintiff's former attorney to defendant was immaterial and surplusage.

**12. Appeal and error ⊜⇒972—Trial ⊜⇒106—Whether or not argument exceeded bounds of propriety to prejudice and injury of complaining party question addressed to sound discretion of court.**

In action of trespass to try title, *held* whether or not argument of counsel exceeded bounds of propriety to prejudice and injury of defendants was question addressed to sound discretion of trial court, and decision will not be disturbed except for abuse.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Deck Martin against Frank R. Bowles, executor of the estate of J. L. Ross, original defendant, and the Dallas Trust & Savings Bank, guardian of J. L. Ross' minor children and others, wherein E. P. Bryan and

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

another intervened. Judgment rendered in favor of intervener Bryan, and defendants appeal from the overruling of a motion for new trial. Affirmed.

See also (Tex. Civ. App.) 128 S. W. 718; 104 Tex. 558, 140 S. W. 432, 141 S. W. 518; (Tex. Civ. App.) 214 S. W. 524; (Tex. Com. App.) 247 S. W. 276.

Harry P. Lawther, of Dallas, for appellants.

E. P. Bryan, of Dallas, for appellees.

LOONEY, J. This suit was instituted in 1905 by Deck Martin and Charley Rogers for the recovery of certain real property located on McKinney avenue in the city of Dallas. Charley Rogers dropped out of the litigation on the first trial. As originally instituted, the suit was against J. L. Ross, and, after his death and the death of his wife, Frank R. Bowles, executor of their estates and guardian of the estates of their two minor children, to wit, Edward and Catherine Ross, was made a party defendant, as was also S. B. Scott, who claimed an interest in the land.

Before the last trial, Bowles resigned as guardian of the minors, and the Dallas Trust & Savings Bank was appointed and qualified as their guardian in his stead, and is, in that capacity, a party defendant to the suit.

Pending the first appeal, Deck Martin compromised with J. L. Ross and conveyed to him the premises in controversy. After the case, on reversal, was returned to the district court, E. P. Bryan, appellee, intervened claiming a two-thirds interest in Deck Martin's share in the property under a power of attorney executed by Martin in his favor, which was of record prior to the compromise with Ross. Reports of the case on the two former appeals will be found in 128 S. W. 718; 104 Tex. 558, 140 S. W. 432, 141 S. W. 518; (Tex. Civ. App.) 214 S. W. 524; and (Tex. Com. App.) 247 S. W. 276.

On the last trial appellees moved for judgment on the answers of the jury to the special issues, which was granted by the court, and judgment rendered in his favor, and, on appellants' motion for a new trial being overruled, notice of appeal was given and perfected to this court.

The facts that constituted the basis for the claim of Deck Martin, plaintiff, and that of E. P. Bryan, intervener, who claims under Martin, are these:

In December, 1875, and for many years prior thereto, Terrell Martin and Seely Martin, negroes, were husband and wife and owned and resided upon a lot of land in the city of Dallas. W. H. Gaston owned a parcel of land on McKinney avenue in said city, of which the land in controversy constituted a part, and he and Terrell and Seely agreed to exchange these properties. Accordingly, Terrell and Seely executed and delivered to Gaston a deed to their lot, and Gaston took possession of the same, but, for some reason, did not convey in writing to Terrell and Seely the lot he had agreed to give in exchange; however, he delivered possession to them of the property, upon which they settled, built a house, and resided until their respective deaths. Terrell died in April, 1886, leaving surviving Seely, his wife, and Sim Martin, a son, who also died, leaving Deck Martin, the plaintiff, as his only child and heir at law.

After the death of Terrell, and in the year 1887, Capt. Gaston deeded the lot of land to Seely Martin which he had agreed to give in exchange for the land theretofore conveyed to him by Terrell and Seely, reciting in said deed a cash consideration, but, in fact, the consideration was the lot conveyed to him by the Martins in 1875 at the time the agreement to exchange lands was made.

Seely Martin died in 1891. There was an administration on her estate, and the probate court ordered the sale of the land to pay debts existing against Seely Martin. The land was sold, and the sale approved by the court, under and through which appellants claim title.

The claim of appellee is based on the contention that the land of which the lot in controversy is a part was community property of Terrell and Seely Martin; that on the death of Terrell, his son Sim took half interest by inheritance, which, on his death, vested in Deck Martin, under whom Bryan, intervener, claims a two-thirds interest by virtue of the terms of the power of attorney and the performance by him of the services contemplated by the provisions of said instrument.

[1] 1. Appellants make the contention that they should be protected as innocent purchasers of the legal title held and owned by Seely Martin, in that R. G. Tanner, under whom Ross and Scott claim, at the time he acquired title, was without notice of any fact or circumstance that would put a reasonably prudent person upon inquiry as to the existence of the interest of the heir of Terrell Martin, which, if diligently pursued, would have acquainted him with the existence of such interest, and, as he was an innocent purchaser of the legal title held by Seely Martin, the title transmitted by him to Scott and Ross is immune from attack by the heirs of Terrell Martin, and it is also their contention that Ross and Scott were in like manner innocent purchasers of the land from Tanner for value and without notice of Deck Martin's interest, if any existed.

The question of notice was submitted to the jury, and, in response to that issue, the jury found that at the time of these respective purchases R. G. Tanner, J. L. Ross, and S. B. Scott were in possession of such facts as would put a reasonably prudent person upon inquiry as to the existence of the interest of the heir of Terrell Martin, which, if diligently pursued, would have acquainted them with the existence of such interest. Thus the is-

sue of notice was resolved by the jury against appellants, and the question for us is, Did the facts and circumstances in evidence justify the verdict?

On the first appeal of this case the appellant was J. L. Ross, who represented at that time the identical interests now represented by the appellants. He contended then, as is here contended, that the facts were not sufficient to put a reasonably prudent person upon inquiry.

In disposing of this contention Judge Rainey, speaking for this court, said:

"To defeat the Martin title thus established, it was incumbent upon Ross to show that he was a purchaser of the land for a valuable consideration without notice of Deck Martin's title· as àn heir of the elder Martins, and this became a sharply contested issue at the trial of the case. Was Ross a purchaser of the 100 feét of land· on McKinney avenue without notice? The court correctly instructed the jury on this issue, and the jury by their verdict has said that he was not. But this verdict is challenged by Ross as not being supported by the evidence. The deed from Gaston to Seely Martin recited, 'It is the same land on which she had lived since 1876.' The affidavit of Ben E. Tanner informed him that Seely Martin had a husband, Terrell Martin; but this affidavit stated Terrell had died without children. The deed from E. Tanner to Ben E. Tanner, a link in Ross' chain of title, recited, 'But there are excepted out of this conveyance the portion of said land by me this day deeded to R. G. Tanner and also an undivided one-half interest inherited by the heirs of Seely Martin, other than Tom Banks, in the 100-foot lot off of the end of said lot fronting on McKinney avenue, which I· do not own.' The inventory and appraisement of the estate of Seely Martin which was approved by the court, recited, 'One lot on McKinney avenue and Cemetery avenue, having been the homestead of Seely Martin, estimated value of same, $250.' It was shown that Terrell and Seely Martin lived in Dallas·as early as 1865, which was then a small town, until their deaths. They were well known. They worked around town as servants for many white families, among them the Ross family, and they would frequently have with them their son, Sim Martin, the father of Deck, and their grandchild, Charley Rogers. Ross knew Sim Martin. They played together when children. These facts, we think, were sufficient to warrant the jury to find that Ross was put on inquiry, which, if pursued, would have notified Ross of Deck Martin's interest in the land. It seems he was satisfied with the affidavit of Tanner and made no further investigation. Ross v. Morrow, 85 Tex. 173, 19 S. W. 1090, 16 L. R. A. 542; Hill v. Moore, 85 Tex. 335, 19 S. W. 162; Daniel v. Mason, 90 Tex. 240, 38 S. W. 161, 59 Am. St. Rep. 815; Land Co. v. Hyland, 8 Tex. Civ. App. 601, 28 S. W. 206." 128 S. W. 719.

The facts and circumstances developed on the first triál mentioned by Judge Rainey were substantially, if not exactly, the same as are presented for our consideration on this appeal. The question was one of fact for the jury, and their finding was, in our opinion, sustained by the evidence.

[2] 2. The question of notice, however, may be eliminated from the case, in view of the fact that the title claimed by appellee is based on the 10-year statute of limitation. This brings us to consider another contention of appellants to the effect that the question of limitation is not involved in the case at all, for the reason that the property constituted a part of the community estate of Terrell and Seely Martin, that they were tenants in common, had acquired the equitable title to the property under the parol agreement with Capt. Gaston, made at the time the exchange of properties was agreed to, and that, after the death of Terrell, the legal title to the property was vested in Seely by the deed to her from Capt. Gaston, through whom appellants claim, in which deed a cash consideration was recited, and therefore that the possession of the property by Terrell and Seely prior to Terrell's death became an immaterial matter, in that it was a joint possession and not adverse to the title subsequently acquired by Seely under the deed from Capt. Gaston, and, in this connection, appellants challenge the correctness of the finding of the jury on the issue of limitation, on the ground that the evidence was not sufficient to sustain the same.

The question of limitation was properly submitted to the jury, and they found that Terrell, together with Seely, had had peaceable, adverse possession of the property in controversy for 10 years, continuously occupying, using, and enjoying the same. The evidence fully sustained this finding of the jury.

The connected question—that is, whether appellee can rely upon the title by limitation that had matured in favor of Terrell or the community of Terrell and Seely, prior to the death of Terrell—was, in our opinion, decided against the contention of appellants on the former appeals of this case. In passing on the question as to the admissibility of the testimony of Capt. Gaston on the first appeal, Judge Rainey, speaking for this court, said:

"This evidence was also admissible to show title in the Martins by the 10-year statute of limitation. MacGregor v. Thompson, 7 Tex. Civ. App. 32, 26 S. W. 649; Improvement Co. v. Shelby, 17 Tex. Civ. App. 685, 41 S. W. 542."

On the second appeal, the case having been transferred to the Amarillo Court of Civil Appeals, Judge Boyce, for the court, said:

"But when the Martins went into possession of said property limitation began to run in their favor (Sheppard v. G. H. & S. A. Ry. Co., 2 Tex. Civ. App. 535, 22 S. W. 267; Heard v. Bowen [Tex. Civ. App.] 184 S. W. 234), and the facts would justify the finding that, in addition to the equitable title, Seely Martin and Deck Martin had title to this property by limitation at the time of the conveyance from said Gaston to Seely Martin."

On writ of error by the Supreme Court to the Amarillo Court of Civil Appeals, the judgment of the latter was affirmed, but, in disposing of the case, Judge Randolph, for Section A of the Commission of Appeals, said:

"If the evidence showed title by limitation in favor of Terrell and Seely Martin prior to the death of Terrell Martin, thus vesting that title in the community, the fact that the survivor afterwards received a deed to the same land would not change its status as against the heirs of the deceased marital partner, holding by inheritance the legal title by limitation." Bowles v. Bryan (Tex. Com. App.) 247 S. W. 279, col. 1.

It thus appears that throughout the history of this litigation the question of limitation has been treated as one of the paramount questions involved.

[3] 3. Reverting to the contention of appellants that they should be protected as innocent purchasers, the question presented is, Can they urge such defense as against a title acquired by limitation? This question has been uniformly answered in the negative by our courts.

In MacGregor v. Thompson, 7 Tex. Civ. App. 32, 26 S. W. 649, Judge Williams, for the Galveston Court of Civil Appeals, said:

"The sole question presented in this appeal by appellant is whether or not appellant, as an innocent purchaser, was entitled to protection against the title acquired by limitation of which he was ignorant when he purchased. When the possession was held for the time, prescribed by law, the title of the former owner was destroyed, and that of the possessor, by his adverse possession, became perfect. He had as full ownership in the land as can be held under any other character of title. Rev. St. art. 3196. This title was of a character that could not be recorded, and hence the registration laws do not apply."

Judge Boyce, for the Amarillo Court of Civil Appeals on the second appeal of this case on this question, used the following language:

"The defense of innocent purchaser of the legal paper title is not available against the owner of a title by limitation. Rev. St. art. 5679; Burton v. Carroll, 96 Tex. 325, 72 S. W. 581; MacGregor v. Thompson, 7 Tex. Civ. App. 32, 26 S. W. 649. If Deck Martin had title to his interest in the land by limitation, it is obvious that the conveyance to Seely Martin could not affect such title thus vested in him, and in such event this title could not be defeated by the plea of innocent purchaser of those purchasing the legal paper title from Seely Martin." Bryan v. Ross (Tex. Civ. App.) 214 S. W. 528, col. 1.

On the same subject, Judge Randolph, for the Commission of Appeals, said:

"That an innocent purchaser is not entitled to protection against a title acquired by limitation is asserted by Judge Williams, then of the Galveston Court of Civil Appeals, in the case of MacGregor v. Thompson, 7 Tex. Civ. App. 32, 26 S. W. 649, and his opinion is so convincing in its reasoning that we here copy from it as follows." 247 S. W. 279, col. 2.

Judge Randolph thereupon makes a part of his opinion a lengthy excerpt from the opinion by Judge Williams, delivered in the MacGregor Case, to the effect that the defense of innocent purchaser is not available as against a title claimed by limitation. Bowles v. Bryan (Tex. Com. App.) 247 S. W. 279.

It is therefore perfectly apparent that, whether or not Tanner, the grantor of Ross, or Ross and Scott, were innocent purchasers of the legal paper title under and through the administration on the estate of Seely Martin, is wholly immaterial, because in no event is such plea available as a defense against the title by limitation that ripened in favor of Terrell and Seely Martin prior to Terrell's death.

[4] 4. Another contention of appellants is that the intervener, E. P. Bryan, did not take, and does not have under the power of attorney given him by Deck Martin, such interest in the land in controversy as entitled him to recover in an action of trespass to try title. The provisions of the power of attorney brought under review by this proposition, after reciting that the attorney will be at considerable trouble and expense in finding out and removing the cloud or clouds from said land, reads as follows:

"Therefore, as remuneration to them, we hereby give, grant, sell, and convey unto them, the said J. J. Hart and E. P. Bryan, two-thirds undivided interest of, in, and to any and all lands, money, and other valuables so recovered for us. Said lands shall be sold and the money divided, or they may be partitioned after being cleared up of all adverse claims whatsoever, as to our said attorneys shall seem best."

It will be stated at this juncture, in order to understand the reference made to other parties, that this power of attorney was executed by Charley Rogers and Deck Martin in favor of J. J. Hart and E. P. Bryan, who, as attorneys for the grantors, instituted the suit. As before stated, Charley Rogers disappeared from the litigation on the first trial, and J. J. Hart conveyed to the intervener, E. P. Bryan, his interest in the subject-matter of the litigation.

The contention now under consideration was made on the second appeal of this case, and was disposed of by Judge Boyce for the Court of Civil Appeals in the following language:

"In the present case the attorney had, by the institution of the suit, identified particular lands as subject to the operation of the 'executory contract,' and had rendered services extending over a period of several years in the prosecution of such suit. He had thus paid a part of the consideration on his executory contract for the acquisition of an interest in this

(277 S. W.)

particular land. His interest at the time of the settlement, it is true, was not a vested title to the land; yet a part of the consideration for such interest had been paid, and upon the performance of the remaining services he would acquire the equitable title to such interest, by virtue of the terms of the power itself and without further act on the part of the grantor. This, it seems to us, is sufficient to constitute an interest in the subject-matter of the power, and prevent the revocation of the power by the grantor so as to defeat such interest. We are of the opinion, therefore, that the attorney had the right to prosecute the suit to recover his interest in the land, notwithstanding the settlement made by his client, Deck Martin, without his consent, and for this reason the judgment of the trial court must be reversed." 214 S. W. 527.

On writ of error, the case was removed to the Supreme Court and referred to Section A of the Commission of Appeals. Judge Randolph, for the Commission, said:

"In this case Bryan was record attorney for the plaintiff in the trial court, had represented him for four years at the two trials of the case in the district court in the performance of his part of the contract as provided in the power of attorney. This was done prior to the purchase of Deck Martin's interest by the defendant Ross between the trial in the district court and appeal to the Court of Civil Appeals or pending the appeal to the Court of Civil Appeals. The suit was filed on July 19, 1905, and the deed from Deck Martin to defendant Ross was executed June 2, 1909. The intervener was entitled to the interest claimed by him in the land in controversy upon proof of Deck Martin's right to recover, if he had not sold to defendant Ross, if the defendants had actual notice of his claim, given them in any way, that he was performing his part of the contract contained in the recorded power of attorney, of which power of attorney they had constructive notice." 247 S. W. 278, col. 1.

On the last trial, which is now under review, the question was properly submitted to the jury, and they answer to the effect that E. P. Bryan, intervener, had partly performed his contract of employment as contained in the recorded power of attorney at the time Deck Martin conveyed the premises to J. L. Ross, and that Ross and Scott had actual notice of this fact.

The evidence, in our opinion, unquestionably sustains these findings, and, in view of the rule of decision heretofore announced in this case by the Amarillo Court of Civil Appeals, and by the Commission of Appeals, appellants' contention must be and is hereby overruled.

[5] 5. Appellants assign error on the action of the court in permitting the witness Charley Rogers to testify over their objection, for the reason that the witness had theretofore been convicted of crime of the grade of felony, and that no pardon and restoration to citizenship had been offered in evidence.

The bill of exception shows that this objection was interposed at the time appellee started to interrogate the witness. Appellants failed to sustain their objection by offering any record proof that the witness had been legally convicted of felony. This was necessary before they were entitled to urge his incompetency. This was announced by our Supreme Court in G. C. & S. F. Ry. Co. v. Johnson, 98 Tex. 76, 78, 79, 72 S. W. 4, 5. The court said:

"* * * It is enough to hold in this case that, without sentence, there is no record establishing a conviction in the sense of the rule requiring the record of the conviction to prove the incompetency of a witness."

The witness Rogers, in the course of his examination, after the objection above stated had been presented and overruled, testified:

"I was convicted for murder of a girl out here in this house [meaning the house where Seely Martin resided] and sent to the penitentiary for 12 years."

It further appears from disconnected statements in his testimony that he served a term as a convict in the penitentiary. But can this character of evidence take the place of the primary evidence required to establish a legal conviction?

In the Johnson Case above cited, there was produced the judgment of the district court based upon the verdict of a jury, and, in addition, it incidentally appeared that, when the deposition of the witness whose competency was called in question was taken, he was in the reformatory. The Supreme Court made this comment:

"* * * * We are of the opinion that the trial court erred in sustaining plaintiff's objection to the competency of the witness Mangone, based upon his conviction of theft from the person. To establish by such a fact the incompetency of a witness, a record showing a conviction must be produced. That which was produced was only the judgment of the district court based upon a verdict. * * * The fact that the deposition of the witness incidentally showed that he was in the reformatory cannot supply the place of the primary evidence of the conviction. To admit such evidence to prove conviction would plainly contravene the rule making the record the best evidence."

Therefore it is our opinion that the objection of appellants to the competency of the witness Rogers was properly overruled, for the reason that it was not shown by legal and competent evidence that the witness had ever been legally convicted of a crime that would render him incompetent to testify as a witness.

[6] However, if it could be said that the parol evidence found in the record was sufficient to prove that the witness had been legally convicted of a felony and was thus rendered incompetent to testify, yet, in our opinion, it was satisfactorily shown that he had been pardoned by the Governor, and that the pardon had been lost or mislaid and

could not on the trial of this case be produced. This sufficiently accounted for the original document to authorize the admission of secondary evidence as to its existence. We accordingly overrule this contenton of appellants.

[7, 8] 6. Appellants complain of the action of the court in permitting appellee to introduce in evidence the testimony of Ellen Miller, given on a former trial of the case, on the ground that no excuse was shown why her deposition had not been taken. In connection with the objection, it was shown that the witness was alive and resided within the jurisdiction of the court, but was infirm, sick, unable, and unwilling to come to court. On this predicate the court overruled the objection of appellants.

The sufficiency of the predicate to authorize the admission of the testimony of this witness was a matter resting largely within the discretion of the trial court, the exercise of which will not be disturbed on appeal unless it clearly appears that the court abused its discretion. Collins v. State, 24 Tex. App. 141, 5 S. W. 848; St. L. S. W. Ry. Co. of Tex. v. Boyd, 56 Tex Civ. App. 282, 119 S. W. 1155; Krouse v. Detroit United R. Co., 170 Mich. 438, 136 N. W. 434; Central R. R., etc., v. Murray, 97 Ga. 326, 22. S. E. 973; 22 C. J. § 517, pp. 432, 433. As we fail to find an abuse of discretion on the part of the trial court in this instance, the assignment calling in question his action is overruled,

[9] 7. Appellants complain of the action of the court in permitting Capt. Gaston, over their objection, to testify in detail in regard to the agreement made by him with Terrell and Seely Martin as to the exchange of lands; the objection being that there was no evidence showing that either Ross or Scott had any knowledge of the transaction between the Martins and Capt. Gaston, or of any of the facts testified to by him.

This objection was evidently made under the view that the defense of innocent purchaser could be interposed, but, as heretofore shown, this defense cannot be successfully urged against the title by limitation held by intervener, hence, for this reason, this contention of appellants must be overruled. However, on each of the former appeals of this case, the question on the admission of Capt. Gaston's testimony in evidence was presented for review, and in each instance the question was decided against the contention of appellants. See opinion by Judge Rainey, Ross v. Martin (Tex. Civ. App.) 128 S. W. 719; opinion of Judge Randolph, Bowles v. Bryan (Tex. Com. App.) 247 S. W. 279.

[10] 8. Appellants objected to so much of the judgment appealed from that decreed a partition of the land between intervener, Bryan, and the defendants, for the alleged reason that such relief was not authorized by the pleadings, in that the pleading of intervener, Bryan, did not ask for partition, and that the only prayer for partition disclosed by the record is contained in the petition of plaintiff Deck Martin, and as to him the judgment rendered was that he take nothing by the suit.

This objection is evidently predicated on the idea that the filing of the plea of intervention by Bryan after Deck Martin had compromised with Ross and Scott was, in effect, the institution of a new suit, and had no relation to the suit that, up to that time, had progressed in the name of Deck Martin as plaintiff.

We cannot adopt this view. The intervention of Bryan was not a new or independent suit, but was a proceeding that grew out of and was incident to the suit then pending in the name of Deck Martin as plaintiff. This view of the place and effect of the plea of intervention in the litigation was announced by Judge Boyce on the second appeal of this cause, as is shown from the following excerpt from his opinion:

"We are of the opinion that the filing of the suit in the name of Deck Martin stopped the running of limitations in favor of appellees as against the intervener's interest. The suit was being prosecuted prior to the intervention for the recovery of the entire interest in the land, and was for the benefit of both the said Deck Martin and the intervener. A judgment in the suit thus prosecuted would have been binding upon the intervener as well as the said Deck Martin. Wickizer v. Williams [Tex. Civ. App.] 173 S. W. 288; Bonner v. Green, 6 Tex. Civ. App. 96, 24 S. W. 835. The intervention in the case is therefore not to be regarded as the institution of a new suit by the intervener, but merely as an incident to the suit already pending, by which was established the right of the intervener to thereafter prosecute in his own name the suit which up to that time had been proceeding for his benefit in the name of Deck Martin. Foote v. O'Roork, 59 Tex 215; Field v. Gantier, 8 Tex. 74." 214 S. W. 528, col. 1.

Accordingly, we hold that the prayer for partition in the petition of Deck Martin, plaintiff, was sufficient to authorize the decree for partition, although in Bryan's plea of intervention this prayer was not repeated.

[11] 9. It is further insisted that so much of the judgment as decreed a cancellation of the deed from Deck Martin to Thomas & Spellman, dated August 12, 1903, is invalid, because Thomas & Spellman were not parties to the suit, and neither the petition of Deck Martin nor Bryan's plea of intervention sought or prayed for the cancellation of said deed, nor was any evidence offered on the trial furnishing any reason or ground for the cancellation of the deed.

Paragraph three of plaintiffs' petition is as follows:

"Plaintiff says that heretofore, to wit, on the 12th day of August, 1903, he employed a firm of

lawyers, to wit, Thomas & Spellman, to recover his part of the property he might be entitled to as heir of Seely Martin, that at the time of such employment he, the said Deck Martin, executed to the said Thomas & Spellman a deed to one-half of his interest in the estate of Seely Martin, reciting a consideration paid of $750, when there was nothing in fact paid but was given for services to be rendered in future in recovering the property; that said Thomas & Spellman did nothing in the case and gave the case up, but deeded their interest as shown by said deed to the defendants by a quitclaim deed, the defendants knowing at the time all the circumstances of the employment, and they paid nothing for the land. That said deed to defendants from Thomas & Spellman has never been recorded but is in their possession, and they are hereby notified to produce same in court upon the trial hereof or secondary evidence as to its contents will be introduced."

In his prayer for relief, plaintiff asked for the restitution of the premises and that the cloud on the title be removed, etc. In support of the above-quoted allegations, the following is found in the statement of facts:

"It is agreed between plaintiff and defendant that Deck Martin employed Thomas & Spellman to recover this property, that Thomas & Spellman did nothing, and they afterwards gave up the case and deeded the property, without any consideration, with full knowledge of the facts to the defendant J. L. Ross."

It thus appears that ample allegations were made in regard to the Thomas & Spellman deed, and the same were abundantly established by the agreement. Thomas & Spellman, in view of the undisputed facts, owned no interest in the land; certainly not after their conveyance to Ross, and therefore could not have been properly joined as defendants in the suit. Whatever interest they had in the land under the contract with Deck Martin was conveyed to Ross. According to our view, the allegations of the plaintiff in regard to the Thomas & Spellman deed, and the order of the court complained of, are wholly immaterial and may be disregarded as surplusage, for the reason that the judgment in favor of intervener, Bryan, against the heirs and legal representatives of Ross effectually extinguish whatever interest Ross had acquired from Thomas & Spellman as well as from all other sources, and effectually canceled the Thomas & Spellman deed, and removed same as a cloud from the title of appellee without specifically so stating. This contention of appellants is overruled.

[12] 10. Appellants further insist that the cause should be reversed because of certain improper remarks made by counsel in his concluding argument to the jury. The bill of exception to the argument of counsel contains six separate paragraphs presenting for our review remarks of counsel made to the jury in his concluding argument on different phases of the case. After a careful consideration of this assignment in connection with all pertinent parts of the record, we have reached the conclusion that the argument complained of was authorized by the record in part, and unauthorized and unsupported in part.

We will not undertake to separate and discuss the argument which, in our opinion, was authorized, from that which we believe to be unauthorized, for the reason that we cannot bring ourselves to the view that appellants were in any way prejudiced by the improper passages in the argument of counsel. There is nothing to indicate that any finding made by the jury was the result of improper argument. The verdict, in our opinion, is satisfactorily sustained by the evidence in every respect, and is, in effect, the same verdict theretofore rendered by three other juries on the same facts. The trial judge was in a much better position to judge whether injurious effects were produced on the minds of the jurors by the remarks of counsel than this court is, viewing the case from the silent record before us.

Whether or not the argument exceeded the grounds of propriety to the prejudice and injury of appellants was a question addressed to the sound discretion of the trial judge, and, as he has overruled appellants' contention on this point, we cannot say, in fact do not believe, that he abused his discretion in this respect. This assignment is therefore overruled.

We have given this case a painstaking, careful consideration, incited thereto by the unusual interest manifested by the parties, the length of time it has been pending, and its eventful history as revealed by the reports of the case, with the result that, in our opinion, appellants received a fair and impartial trial at the hands of the trial judge, that the facts fully sustain the findings of the jury, and that the ends of justice were attained by the judgment appealed from. We therefore overrule appellants' assignments of error and affirm the judgment.

Affirmed.